UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXIMINO LOPEZ-MIGUEL (A-240-373-219),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT,<br>Respondent. | No. 1:26-cv-6712 TLN CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Maximino Lopez-Miguel (A-240-373-219), a citizen and native of Mexico, was admitted to the United States on December 14, 2020, as an H2B temporary worker. On August 13, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained petitioner. Petitioner, proceeding without counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition be granted and petitioner be immediately released.

## I. FACTUAL BACKGROUND

Petitioner is a 28 year old national and citizen of Mexico. (ECF No. 1 at 6.) Petitioner was admitted to the United States on December 14, 2020, on an H2B visa. (Id.) The visa expired

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

on May 1, 2021. (ECF No. 6-3 at 2.) On April 14, 2023, petitioner was processed by the Department of Homeland Security in Rivera Beach, Florida, and given a follow up date for June 14, 2023, in Miami, Florida. (ECF No. 1 at 6.) When petitioner appeared for his court hearing, he was informed his alien registration number was not in the system and he should wait for a new court hearing. (Id.)

Years later, after serving time at Indian River County Sheriff's Office for driving without a license, on July 22, 2026, petitioner was taken into U.S. Immigration and Customs Enforcement ("ICE") custody. (Id.) Petitioner does not have a final order of removal. Since arriving in the United States, petitioner has been gainfully employed by working in roofing, and has lived at the same place for five years. (Id.) Petitioner has not received a bond hearing since he was detained. (Id. at 2.)

According to immigration records, petitioner was previously arrested on April 14, 2023, for driving without a license, and bonded out. (ECF No. 6-3 at 3.) It appears immigration officials attempted to detain petitioner, but due to lack of bed space, petitioner was released on his own recognizance. (Id.)

Respondent does not contest petitioner's factual allegations, and does not contend petitioner is dangerous or a flight risk. (See ECF No. 6.)

Petitioner has been in continuous detention since August 13, 2026. (Id.)

## II. PROCEDURAL BACKGROUND

On August 24, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On September 4, 2026, respondent filed a timely answer. (ECF No. 6.) Petitioner did not file a reply. (See Docket.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a

petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner contends that detention in his case is not mandatory, arguing he is detained under 8 U.S.C. § 1226, not 8 U.S.C. § 1225. (ECF No. 1 at 7.) Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the petition as challenging his detention on statutory grounds, as well as raising a procedural due process claim under the Fifth Amendment. Respondent does not argue that petitioner is a flight risk or a danger to the community, and instead agrees petitioner is detained pursuant to 8 U.S.C. § 1226(a), and argues that petitioner is lawfully detained pending his removal proceedings under § 1226. (ECF No. 6 at 3.) Respondent does not contend petitioner has a criminal history. (See ECF No. 6.) Respondent also appears to claim petitioner failed to exhaust his administrative remedies. (Id. at 2:4-19.)

### A. Statute Governing Petitioner's Detention

The parties agree that petitioner is detained pursuant to 8 U.S.C. § 1226, and is not subject to mandatory detention under 8 U.S.C. § 1225(b). See Quispe v. Becerra, No. 1:25-cv-2002 CSK, 2025 WL 3774570, at *1, 5 (E.D. Cal. Dec. 31, 2025) (explaining that the only statute which could provide detention over petitioner—a noncitizen who had overstayed her visa and whose removal proceedings were ongoing—was 8 U.S.C. § 1226 because that statute expressly provides for detention before a final order of removal) (citation and quotation omitted); Wei v. Chestnut, No. 1:26-cv-01065-DJC-CKD, 2026 WL 412203, at *1 (E.D. Cal. Feb. 13, 2026) (finding that petitioner, who had overstayed his visa as a visitor for pleasure, was detained under § 1226(a) because he had been present in the United States since 2018 and was not an "applicant for admission" under § 1225).

### B. Expiration of Petitioner's Visa

Petitioner's H2B visa expired on May 1, 2021. (ECF No. 6-3 at 2.) On April 14, 2023,

petitioner was released by immigration officials on his own recognizance. (Id. at 3.) "The federal courts have routinely concluded that a noncitizen paroled into the United States has a due process liberty interest—as balanced in a due process analysis—that is not extinguished by parole expiration." Baptiste v. Bondi, No. CV 26-02586, 2026 WL 1684433, at *6 (D. Ariz. May 21, 2026) (collecting cases, including Seyed H.H. v. Andrews, No. 26-cv-00256, 2026 WL 253426, at *4 (E.D. Cal. Jan. 30, 2026), and Omer G.G. v. Kaiser, No. 25-cv-0147, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025)). Because petitioner has lived in the United States for over five years since his visa expired, this Court must next determine whether petitioner's due process rights have been violated.

**C. Procedural Due Process Claim**

The Court liberally construes the petition as raising a claim that petitioner was detained in violation of his right to due process. Respondent does not address the merits of a due process claim in the answer. (See ECF No. 6.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.

Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

This Court further observes that courts have found protected liberty interests where the government knew of the noncitizen's continued presence in the United States and yet took no action to detain the noncitizen for months or years after their visa expired. See Huang v. Blanche, No. 2:26-cv-02157-BAT, 2026 WL 2271901, at *1, 4 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until over ten years after visa expired); Benipal v. Rokosky, No. 26-cv-01306-RM-CDB, 2026 WL 1355010, at *1, 10 (D. Ariz. Apr. 24, 2026), findings and recommendations adopted, 2026 WL 1352061 (D. Ariz. May 14, 2026) (finding that noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa had expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the United States, and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), appeal dismissed sub nom Kalkan v. Chestnut, No. 26-3277, 2026 WL 2446315 (9th Cir. June 18, 2026) (petitioner with expired visa and pending asylum application had protected liberty interest where immigration officials did not promptly detain petitioner based on expiration of that status); Kharitonova v. Albarran, No. 26-cv-01362-JSC, 2026 WL 531441, at *1-2 (N.D. Cal. Feb. 25, 2026) ("Petitioner [with expired visa] has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. ... The government's decision

not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' ... The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. ... Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").

Here, petitioner has a protected liberty interest in remaining out of custody where he lived in the United States for over five years after his visa expired. The government knew of petitioner's continued presence in the United States following the expiration of his visa, as he was briefly detained in 2023, yet the government took no action to remove petitioner at that time. During his over five years of living in the United States, petitioner lived at the same address, worked, and established community ties. (ECF No. 1 at 6.) Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing

Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over five years after his visa expired, petitioner was free from immigration detention before his July 22, 2026 detention. Petitioner worked and lived at the same address. (ECF No. 1 at 6.) The over five year duration of his freedom from immigration detention elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent does not contend that petitioner is or was a flight risk or a danger to the community, or that petitioner has a criminal history. (See generally ECF No. 6.) Petitioner has been detained since July 22, 2026 without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community. Respondent concedes petitioner has not been given a bond hearing, and immigration records show that on June 19, 2026, petitioner requested an immigration judge review petitioner's custody determination. (ECF No. 6-2.)

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner was entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief based on a violation of his procedural due process rights.

**D. Exhaustion**

Respondent argues that petitioner failed to exhaust his administrative remedy. (ECF No. 6 at 2-4.) 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his [or her] administrative remedies before proceeding in court." Id. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the court may waive the exhaustion

requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. Laing, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

Given that petitioner was allowed to remain free from immigration detention for over five years after the expiration of his visa, worked, and has no criminal history, this Court finds that petitioner may suffer irreparable injury without immediate judicial relief. The Court concludes that the prudential exhaustion requirement should be waived.

## V. CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on procedural due process grounds.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on due process grounds.
2. Respondent be ordered to IMMEDIATELY release petitioner Maximino Lopez-Miguel (A-240-373-219) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondent has custody of petitioner's possessions or documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.
3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 9, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/lope6712.157.2241.imm.RELEASE